

FILED

May 31 2017, 8:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Kristin M. Eichel
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Latorrea Denise Ware,<br>*Appellant-Petitioner,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Respondent.* | May 31, 2017<br><br>Court of Appeals Case No.<br>20A03-1610-PC-2297<br><br>Appeal from the Elkhart Circuit Court<br><br>The Honorable Terry C. Shewmaker, Judge<br><br>Trial Court Cause No.<br>20C01-1412-PC-46 |

**Najam, Judge.**

## Statement of the Case

[1] Latorrea Denise Ware appeals from the post-conviction court's denial of her petition for post-conviction relief. Ware raises two issues for our review, but we need only discuss the following issue: whether the post-conviction court erred

when it concluded that Ware did not receive ineffective assistance from her trial counsel. We hold that, had Ware's trial counsel moved to suppress evidence seized by officers who had entered her home with a valid warrant but without first clearly announcing their presence, that motion would not have been successful. Accordingly, we affirm the post-conviction court's judgment that Ware did not receive ineffective assistance from her trial counsel.

## Facts and Procedural History

[2] The facts underlying Ware's convictions were stated by this court on direct appeal:

> In February 2012, a confidential source participated in two controlled buys of cocaine from Ware. The police used information gathered during the controlled buys to obtain a search warrant for Ware's apartment in Elkhart. On February 24, 2012, Detective Timothy Freel of the Elkhart Police Department led several officers, including some uniformed officers, in the execution of the search warrant. Detective Freel was wearing plain clothes and a black tactical vest when he knocked on the door to Ware's apartment. When someone asked who was at the door, Detective Freel responded that he was from maintenance and was there to change a furnace filter. Ware opened the door and could see Detective Freel wearing his vest and tried to shut the door. Detective Freel put his foot in the doorway, tried to identify himself as a police officer, drew his weapon, and ordered the occupants of the apartment to the ground. The police found cocaine and money used in the controlled buys in the apartment.

> The State charged Ware with Class A felony dealing in cocaine, two counts of Class B felony dealing in cocaine, and Class D

felony maintaining a common nuisance. A jury found Ware guilty as charged. . . .

*Ware v. State*, No. 20A03-1401-CR-18, 2014 WL 4116469, at *1 (Ind. Ct. App. Aug. 21, 2014) (footnote omitted) ("*Ware I*").

[3] In her direct appeal, Ware argued that the trial court committed fundamental error when it admitted the evidence seized during the execution of the search warrant. We rejected Ware's argument as follows:

> Ware contends that Detective Freel's initial false identification of himself as a maintenance man and the lack of identifying police uniform when she first opened the door violated basic principles of due process. We do not agree. There was testimony at trial that the purpose of police officers falsely identifying themselves when they execute a search warrant is to "safely get people to the door" and to avoid the destruction of evidence and people fleeing from windows. Tr. p. 194. This is consistent with Detective Freel's testimony that safety was the primary concern when they entered the apartment. He also testified that it is standard operating procedure to have weapons drawn and to order the occupants to the ground because many times drug dealers have weapons and guns. This procedure allows police officers to have total control of the situation and "make everything safe[.]" *Id.* at 128.
>
> Detective Freel also testified that, when Ware opened the door, she could see he was wearing a black tactical bullet proof vest and he was trying to identify himself as a police officer. He also testified that plain clothes officers wear either a badge or a vest that says police. Further, there was testimony that the search was conducted with uniformed officers near the door to confirm the police presence.

> Under these circumstances, we cannot conclude that the manner in which the search warrant was executed was the type of egregious circumstance that warrants the application of the fundamental error doctrine. . . .

*Id.* at *2.

[4] Thereafter, Ware filed an amended petition for post-conviction relief. In that petition, Ware asserted that, had her trial counsel moved to suppress the evidence seized, that motion would have been successful under Article 1, Section 11 of the Indiana Constitution. As such, Ware argued, her trial counsel rendered ineffective assistance of counsel when he failed to move to suppress the evidence. After an evidentiary hearing, the post-conviction court rejected Ware's argument[1] and denied her petition for relief. This appeal ensued.

## Discussion and Decision

[5] Ware appeals the post-conviction court's denial of her petition for post-conviction relief. Our standard of review is clear:

> The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004) (citations omitted). When appealing the denial of post-

---

[1] We need not discuss on appeal Ware's argument that the post-conviction court erred when it concluded that her claim of ineffective assistance of counsel was precluded by our fundamental-error analysis in *Ware I*. Further, we note that the post-conviction court did not undertake an analysis under Article 1, Section 11 when it rejected Ware's petition. Nonetheless, we may affirm the post-conviction court's judgment on any theory supported by the record, *Dowdell v. State*, 720 N.E.2d 1146, 1152 (Ind. 1999), and it remains Ware's burden to persuade this court that the post-conviction court's judgment is erroneous, *see Campbell v. State*, 19 N.E.3d 271, 273-74 (Ind. 2014).

conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id.* To prevail on appeal from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Weatherford v. State*, 619 N.E.2d 915, 917 (Ind. 1993). Further, the post-conviction court in this case made findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). Although we do not defer to the post-conviction court's legal conclusions, "[a] post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (internal quotation omitted).

*Campbell v. State*, 19 N.E.3d 271, 273-74 (Ind. 2014) (alteration original to *Campbell*).[2]

[6]  In particular, Ware argues that she received ineffective assistance from her trial counsel:

> When evaluating an ineffective assistance of counsel claim, we apply the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *See Helton v. State*, 907 N.E.2d 1020, 1023 (Ind. 2009). To satisfy the first prong, "the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002) (citing

---

[2] Ware's assertions on appeal that we should credit some portions of Detective Freel's testimony over others, or otherwise consider evidence other than that most favorable to the post-conviction court's judgment, are contrary to our standard of review, and we reject them.

*Strickland*, 466 U.S. at 687-88, 104 S. Ct. 2052). To satisfy the second prong, "the defendant must show prejudice: a reasonable probability (i.e. a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694, 104 S. Ct. 2052).

*Id.* at 274.

[7] Ware asserts that the officers who entered her house pursuant to a search warrant violated her rights under Article 1, Section 11 because they did not first announce that they were police officers.[3] As the Indiana Supreme Court has made clear:

> This Court has long recognized that the Indiana Constitution's provision dealing with searches and seizures requires "that the police knock and announce their authority before conducting a search of a dwelling." *State v. Dusch*, 259 Ind. 507, 512, 289 N.E.2d 515, 517 (1972). This requirement, however, "is not to be adhered to blindly regardless of the particular circumstances confronting the authorities at the time the search is to be conducted." *Id.* In *Dusch*, this Court noted that such requirement may not apply when the facts present sufficient exigent circumstances. *Id.* at 512-13, 289 N.E.2d at 518. Subsequent Indiana appellate decisions have applied *Dusch* to find that police should knock and announce their authority before conducting a search; such procedure is not absolute, being

---

[3] Ware makes no argument under the Fourth Amendment to the United States Constitution. *Cf. Hudson v. Michigan*, 547 U.S. 586, 590-602 (stating that Fourth Amendment jurisprudence does not require the exclusion of evidence following the failure of police to knock and announce). Ware also asserts that the officers' entry into her home violated Indiana Code Section 35-33-5-7, but she does not provide an analysis under that statute that is independent of her analysis under Article 1, Section 11. Accordingly, we do not separately consider it.

subject to exigent circumstances; and reasonableness of police conduct is the touchstone for consideration. *See Moran v. State*, 644 N.E.2d 536 (Ind. 1994) . . . .

In recent years, this Court has expressed that "[t]he legality of a governmental search under the Indiana Constitution turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances." *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind. 2005) (citing *Moran*, 644 N.E.2d at 539). To determine whether a residential entry violated Article 1, Section 11, we apply a "totality-of-the-circumstances test to evaluate the reasonableness of the officer's actions." *Duran v. State*, 930 N.E.2d 10, 17 (Ind. 2010). A more elaborate explanation and methodology for evaluating such reasonableness is provided in *Litchfield*:

> In sum, although we recognize there may well be other relevant considerations under the circumstances, we have explained reasonableness of a search or seizure as turning on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs.

824 N.E.2d at 361.

*Lacey v. State*, 946 N.E.2d 548, 550 (Ind. 2011) (some citations omitted). In other words, the ultimate question under Article 1, Section 11 is whether the officers' "decision . . . to enter without first knocking and announcing their presence," even when the officers have already procured a search warrant, was

reasonable "in light of the totality of the circumstances at the time of the entry." *Id.* at 552.

[8] We cannot agree with Ware's assertion that, had her trial counsel objected to the admission of the seized evidence under Article 1, Section 11, the trial court would have been required to sustain the objection and exclude the evidence seized. First, the officers' degree of concern, suspicion, or knowledge that Ware had engaged in criminal activity was substantial: officers had conducted two controlled drug buys from Ware prior to obtaining the search warrant for Ware's residence.

[9] Second, the degree of intrusion was minimal. On this point, we agree with the State's assertion that "the correct comparison is not between searching a person's home versus not search the home" but "between the degree of intrusion posed by standard knock-and-announce procedures versus the degree of intrusion in this case." Appellee's Br. at 18. That is, the officers here had already secured a valid warrant to search Ware's residence; her challenge is not to the validity of that warrant but to the manner in which the officers executed that warrant, namely, entering Ware's residence without first clearly announcing their presence. We conclude that that difference resulted in a minimal degree of intrusion on her ordinary activities.

[10] Third, the extent of law enforcement needs was high. The officers had a valid warrant to search Ware's residence for drugs; the officers knew that Ware had a prior felony conviction for dealing in cocaine; and the officers knew, based on

their experience, that drug dealers commonly possess firearms. As such, when Ware observed the officers' presence and then quickly closed the door on them, the need for the officers to secure the location and execute the warrant safely was substantial. Thus, in light of the totality of the circumstances, the officers' entry into Ware's home without first clearly announcing their presence was reasonable and not in violation of her rights under Article 1, Section 11.

[11] Finally, we reject Ware's argument that the knock-and-announce rule under Article 1, Section 11 may only be disposed of "when exigent circumstances exist." Reply Br. at 4. To be sure, Indiana's case law frequently discusses the disposal of that rule in those circumstances, but the Indiana Supreme Court's opinion in *Lacey* could not be more clear: the ultimate question under Article 1, Section 11 is the reasonableness of the police action under the totality of the circumstances. 946 N.E.2d at 550, 552. In any event, we agree with the State that Ware's response to seeing the officers outside her front door, coupled with the drug-related nature of the alleged offenses, created exigent circumstances that justified the officers' immediate entry to secure the area and execute the valid warrant.

[12] In sum, had Ware's trial counsel moved to suppress the evidence under Article 1, Section 11, that motion would not have been successful. Accordingly, counsel did not render ineffective assistance when he chose to not pursue a motion to suppress, and we affirm the post-conviction court's denial of Ware's petition for post-conviction relief.

[13]    Affirmed.

Bailey, J., and May, J., concur.