ATTORNEY FOR APPELLANT
Matthew J. McGovern
Anderson, Indiana

ATTORNEYS FOR APPELLEE
Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Monika Prekopa Talbot
Deputy Attorneys General
Indianapolis, Indiana

# In the
# Indiana Supreme Court



FILED
Oct 18 2017, 12:48 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

No. 82S01-1704-CR-191

MARIO WATKINS,

*Appellant (Defendant),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff).*

Appeal from the Vanderburgh Circuit Court, No. 82C01-1412-F2-5337
The Honorable Kelli E. Fink, Magistrate

On Petition to Transfer from the Indiana Court of Appeals, No. 82A01-1510-CR-1624

**October 18, 2017**

**Rush, Chief Justice.**

Evansville police executed a search warrant at Mario Watkins's home with a flash-bang grenade, battering ram, and a dozen heavily armed SWAT officers. Once inside, they found cocaine, marijuana, and a gun. Watkins argues that the intrusive entry violated the Indiana Constitution and that the search warrant was unsupported by probable cause under the Federal Constitution.

For the state constitutional analysis, we apply our well-established <u>Litchfield</u> test and hold that Evansville police did not act unreasonably under the totality of the circumstances. And for the federal analysis, we uphold the search warrant because its supporting affidavit shows a substantial basis for finding probable cause. We therefore affirm the trial court.

**Facts and Procedural History**

A long-time confidential informant saw Mario Watkins in his Evansville home with a gun, cocaine, and marijuana. After receiving this tip, Evansville police got a search warrant, surveilled the house, and decided to send in the SWAT team. The team met to plan the warrant execution, taking into account the layout of the house, Watkins's violent criminal history, and the danger posed by four adults with narcotics and a gun.

Soon after, twelve SWAT officers arrived at Watkins's house in an armored vehicle. One officer bashed in the front door with a battering ram while another announced the team's presence over a loudspeaker. A third officer's job was to use a flash-bang grenade—a diversionary device that emits a loud noise and bright flash of light—to distract anyone inside. Following standard safety precautions, he did a "quick peek" into the front room to see whether the grenade was appropriate, then deployed it six inches inside the door.[1] He did not know that a nine-month-old boy was lying under a blanket in a playpen in that room.

Officers discovered the child moments after the grenade went off, and took him outside. They then found four adults—including Watkins—in the rest of the house. When they arrested Watkins, he told them that everything in the house was his.

Searching the house, officers found a plate with crack cocaine residue, digital scales, 4.2 grams of crack cocaine, 706 grams of marijuana, 35 hydrocodone pills, 21 alprazolam pills, 25 oxycodone pills, $263 in cash, and a .40 caliber Hi-Point handgun.

The State charged Watkins with multiple felonies. He filed a motion to suppress, arguing that the search warrant was unsupported by probable cause under the Fourth Amendment and that

---

[1] The trial record indicates that police deployed a second flash-bang grenade through the kitchen window, but Watkins's arguments at the suppression hearing and on appeal mention only the one deployed at the front door.

its execution violated the search-and-seizure protections of the Fourth Amendment and Article 1, Section 11 of the Indiana Constitution. The trial court denied the motion.

The trial court then severed the unlawful possession of a firearm charge, and the remaining counts went to trial. The jury deadlocked on a neglect of a dependent charge, but found Watkins guilty of possession of a schedule II controlled substance as a lesser-included Class A misdemeanor, possession of cocaine as a Level 6 felony, possession of a schedule IV controlled substance as a lesser-included Class A misdemeanor, possession of marijuana as a lesser-included Class B misdemeanor, and maintaining a common nuisance as a Level 6 felony.

Watkins appealed, arguing that the search warrant affidavit did not establish probable cause in violation of the Fourth Amendment and that the search warrant execution was unreasonable under Article 1, Section 11 of the Indiana Constitution. A split panel of the Court of Appeals reversed. The majority found the search unreasonable under Article 1, Section 11's Litchfield test because "the extent of law enforcement needs for a military-style assault was low and the degree of intrusion was unreasonably high." Watkins v. State, 67 N.E.3d 1092, 1102 (Ind. Ct. App. 2017). Judge May dissented, as she would have found the search reasonable under the totality of the circumstances. Id. at 1102 (May, J., dissenting).

The State petitioned for transfer, which we granted—thus vacating the Court of Appeals opinion. Ind. Appellate Rule 58(A).

## Standard of Review

Watkins challenges the constitutionality of the warrant execution only under Article 1, Section 11 of the Indiana Constitution—an issue that we review de novo. Zanders v. State, 73 N.E.3d 178, 181 (Ind. 2017).

He then challenges the sufficiency of the search warrant affidavit only under the Fourth Amendment. We likewise review de novo the trial court's paper-record decision upholding the issuance of a search warrant. Houser v. State, 678 N.E.2d 95, 98 (Ind. 1997). But we give "great deference" to the prior judge's initial, underlying probable cause finding—affirming if a "substantial basis" supported it and resolving doubtful cases in favor of upholding the warrant. Id. at 98–99 (quoting Illinois v. Gates, 462 U.S. 213, 236–39 (1983)).

**Discussion and Decision**

**I.  Police Did Not Execute This Search Warrant Unreasonably Under Article 1, Section 11 of the Indiana Constitution.**

The parties agree that the method of executing a search warrant triggers our State Constitution's protections, but they dispute the proper test for determining whether that method is reasonable. We hold that the totality-of-the-circumstances <u>Litchfield</u> test—a test applied hundreds of times in our courts—remains well-suited to assess reasonableness under Article 1, Section 11. See <u>Simons v. Simons</u>, 566 N.E.2d 551, 557 (Ind. Ct. App. 1991) ("If it ain't broke, don't fix it!"). Applying that test here, we find that the search warrant execution was not unreasonable.

*A.  The <u>Litchfield</u> test governs the reasonableness of search warrant executions.*

Our Indiana Constitution safeguards the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure." Ind. Const. art. 1, § 11. As the parties agree, a *search* warrant's execution is axiomatically a "search," so it triggers Section 11's protection. <u>See</u> <u>Lacey v. State</u>, 946 N.E.2d 548, 550 (Ind. 2011).

The SWAT team's search of Watkins's home, then, must live up to our Constitution's expectations—it must not be "unreasonable." The parties disagree on how to determine reasonableness. Watkins asks us to stick with the totality-of-the-circumstances test we established in <u>Litchfield v. State</u>, 824 N.E.2d 356, 359–61 (Ind. 2005). The State argues that <u>Litchfield</u> shouldn't apply to search warrant executions and proposes a new test: search warrant executions should be unreasonable only if "no reasonable officer" would execute a search that way.

We agree with Watkins that the <u>Litchfield</u> test remains well-suited to assess the reasonableness of search warrant executions, making any new test unnecessary. This totality-of-the-circumstances test is our "faithful stand-by" to determine reasonableness under our Constitution, <u>Zanders</u>, 73 N.E.3d at 186, and is appropriate for a range of contexts, <u>see</u> <u>Garcia v. State</u>, 47 N.E.3d 1196, 1199 (Ind. 2016). As we held in <u>Litchfield</u> itself, the test applies broadly to "a governmental search." 824 N.E.2d at 359. Indeed, <u>Litchfield</u> governs the reasonableness of searches incident to arrest, <u>Garcia</u>, 47 N.E.3d at 1199; traffic stops, <u>Robinson v. State</u>, 5 N.E.3d 362, 368 (Ind. 2014); vehicle searches, <u>State v. Hobbs</u>, 933 N.E.2d 1281, 1287 (Ind. 2010); trash searches, <u>Membres v. State</u>, 889 N.E.2d 265, 269 (Ind. 2008); and protective sweeps, <u>Weddle v.</u>

State, 989 N.E.2d 371, 378 (Ind. Ct. App. 2013), trans. denied. In short, its application is comprehensive.

Home searches are no different; we apply the Litchfield test "[t]o determine whether a residential entry violated Article 1, Section 11." Lacey, 946 N.E.2d at 550. Litchfield accordingly governs both warrantless home entries, Holder v. State, 847 N.E.2d 930, 940–41 (Ind. 2006), and the execution of *arrest* warrants at a home, Duran v. State, 930 N.E.2d 10, 19 (Ind. 2010). And in Lacey, we held that no-knock *search* warrants do not require prior judicial authorization because they are governed by the Litchfield test based on the "circumstances at the time the warrant was served." 946 N.E.2d at 550, 552–53. In line with Lacey, the Court of Appeals—both here and in its recent Ware opinion—applied Litchfield to search warrants. Ware v. State, 78 N.E.3d 1109, 1113–14 (Ind. Ct. App. 2017), trans. denied; Watkins, 67 N.E.3d at 1102. This totality-of-the-circumstances test thus governs the reasonableness of search warrant executions.

Even if our precedent did not cement Litchfield's application here, we would still reject the State's "no reasonable officer" test. As we recently recognized, our Constitution grants homes its "highest protection." Carpenter v. State, 18 N.E.3d 998, 1002 (Ind. 2014) (quoting Moran v. State, 644 N.E.2d 536, 540 (Ind. 1994)). We cannot dial down that protection by isolating search warrant executions with a special, less protective test. In fact, the Litchfield test is well-suited for all searches—including warrant executions—because it looks to the totality of the circumstances.

Finally, the State's rationale for its test—that courts should not second-guess officers—implies that judges should defer to police when analyzing an Article 1, Section 11 claim. True, we refrain from "unrealistic second-guessing," especially when "police are acting in a swiftly developing situation." Browder v. State, 77 N.E.3d 1209, 1215 (Ind. Ct. App. 2017), trans. denied (quoting United States v. Sharpe, 470 U.S. 675, 686 (1985)). But a reasonableness analysis under Article 1, Section 11 must account for more than police officers' judgment calls; it is a multi-faceted determination that ultimately belongs to judges. See Brown v. State, 653 N.E.2d 77, 79 (Ind. 1995). So we turn now to that analysis, applying our totality-of-the-circumstances Litchfield test.

*B. This search warrant was not executed unreasonably under the totality of the circumstances.*

Under the Litchfield test, we assess reasonableness under the totality of the circumstances, balancing "1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the

degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." Carpenter, 18 N.E.3d at 1002 (quoting Litchfield, 824 N.E.2d at 361).

1.  The degree of police suspicion.

Watkins argues that police suspicion was low because little to no evidence showed that drugs were in his house. But this argument is misplaced because a valid warrant means that police had probable cause to believe that Watkins's home contained evidence of a crime. See Duran, 930 N.E.2d at 18; Membres, 889 N.E.2d at 275.

Evansville police also strongly suspected that executing the search warrant would be dangerous. They heard about the gun and drugs in the house from a reliable confidential informant who had worked for them "extensively" for sixteen to eighteen months, leading to dozens of arrests and convictions. Officers bolstered this suspicion by watching the house before executing the search warrant, which led them to notice activity consistent with active drug dealing: "short term traffic" to the house and Watkins pulling a small plastic bag from under a trash can behind the house. In short, not only did police have a valid warrant, they also corroborated the informant's tip before sending in the SWAT team.

2.  The degree of intrusion.

Watkins argues, the State admits, and indeed any reasonable person would agree, that the degree of intrusion was high. The SWAT team bashed in the front door with a battering ram less than fifteen seconds after pulling up in an armored vehicle. Less than three seconds after that, police deployed a flash-bang grenade into a room occupied only by a nine-month-old infant. A small army of officers carrying assault rifles then stormed the house, while others watched through windows and the front door.

Despite this aggressive entry, police moderated the intrusion. The officer deploying the flash-bang grenade did a "quick peek" inside to check for people or smells (that could indicate flammable materials or explosive methamphetamine) that would make a flash-bang dangerous.[2]

---

[2] Watkins argues that the video of the search shows that there was no "quick peek." But the video does not "indisputably contradict" the officer's testimony that he did one. See Love v. State, 73 N.E.3d 693, 699–700 (Ind. 2017). The officer also testified that his view was much wider than what the camera captured because the camera was mounted directly on top of his head.

Because he couldn't see the entire room, he took the additional precaution of setting off the grenade in the threshold—only six inches inside the door. So while the degree of intrusion was high, police carefully tailored their tactics.

3. The extent of law enforcement needs.

Watkins also argues that law enforcement needs were low, downplaying the officers' knowledge that the house harbored cocaine, marijuana, four adults, and a gun. But guns and illegal drugs are a dangerous combination. See Polk v. State, 683 N.E.2d 567, 571 (Ind. 1997) (noting the "violent and dangerous criminal milieu created by drug dealing and possession"). While that combination is not enough to justify intrusive searches *per se* (Litchfield is, after all, a totality-of-the-circumstances test), it certainly increases law enforcement needs. This case was no exception. The gun was not hidden or locked in a safe; the informant saw Watkins carrying it. Add Watkins's criminal history—including drug crimes, robbery, and burglary—and the law enforcement needs were strong.

4. Balancing the totality of the circumstances.

Under the totality of the circumstances, this search was not unreasonable. Officers strategically protected themselves while searching a house that they strongly suspected had cocaine, marijuana, and a suspect with a gun and violent criminal history. The search was intrusive; we cannot describe the use of a battering ram, flash bang grenade, and SWAT team any other way. But our constitutional analysis balances that invasiveness with police safety and other law enforcement needs. Mitchell v. State, 745 N.E.2d 775, 786 (Ind. 2001). The significant intrusion here did not outweigh the even more significant police interests.

Watkins cites several Seventh Circuit civil damages cases to argue that this search was unreasonable. See, e.g., Estate of Escobedo v. Bender, 600 F.3d 770 (7th Cir. 2010); Molina v. Cooper, 325 F.3d 963 (7th Cir. 2003). These cases do not control for two reasons. First, they analyze reasonableness under the Fourth Amendment, while Watkins's challenge here rests solely on Article 1, Section 11. See Carpenter, 18 N.E.3d at 1001 ("Although Indiana's Section 11 and the Federal Fourth Amendment are textually identical, they are analytically distinct."). Second, their analysis zooms in on flash-bang grenades—something incompatible with our totality-of-the-circumstances test.

Even if we did apply the Seventh Circuit's flash-bang grenade jurisprudence, though, this search was likely not unreasonable. In Bender, the court found the use of flash-bang grenades unreasonable because police blindly threw them into an apartment without any threat of violence to anyone but the resident himself. 600 F.3d at 785–86. And in Molina, the court found their use reasonable because police believed that someone in the house had a violent criminal record and access to weapons. 325 F.3d at 973. This case is much more like Molina than Bender: police knew that Watkins was in the home and that he had a violent criminal history and a gun. And unlike in Bender, police took the precautions of a "quick peek" and setting the flash-bang just inside the doorway instead of blindly lobbing it into the room.

But make no mistake: flash-bang grenades should be the exception in search warrant executions. Their extraordinary degree of intrusion will in many cases make a search constitutionally unreasonable. See Watkins, 67 N.E.3d at 1104 (May, J., dissenting). And we have serious concerns about officers here setting off a flash-bang grenade when the only person in the room was a nine-month-old. Ultimately though, this search warrant execution—under Litchfield's totality-of-the-circumstances test—did not violate our Constitution's search-and-seizure protections.

## II.     A Substantial Basis Supports Probable Cause for the Search Warrant Under the Fourth Amendment.

Watkins challenges the search warrant affidavit's sufficiency only under the Fourth Amendment. As a reviewing court, our duty "is simply to ensure that [there was] a substantial basis" for finding probable cause. Illinois v. Gates, 462 U.S. 213, 238 (1983). We owe "great deference" to the initial probable-cause determination, and will not invalidate warrants by interpreting probable cause affidavits "in a hypertechnical, rather than a commonsense, manner." Id. at 236.

Evansville police applied for a warrant on December 17, 2014. The probable cause affidavit read in part,

> Within 48 hours of December 16, 2014, a credible and reliable confidential informant (hereinafter "CI") observed more than ten (10) grams of crack cocaine inside of 314 W. Illinois St., Evansville, IN. Your Affiant met with CI and had CI direct him to the residence in your Affiant's vehicle. . . .

> During surveillance on 314 W. Illinois St., Evansville, Indiana in the early morning hours of December 17, 2014, Detectives came to determine that at least one (1) resident of 314 W. Illinois St., Evansville, IN is Mario Watkins. . . .
>
> With respect to CI's credibility and reliability: CI has been working with Detectives with the Evansville Vanderburgh County Joint Drug Task Force for over one (1) year. The information provided by CI has led to the arrest of numerous [] individuals involved in narcotics activity. The arrests made on the information provided by CI have resulted in convictions on both the federal and state level[s]. CI has provided information that has been utilized on judicially issued search warrants. Information provided by CI has led to the seizure of multiple pounds of narcotics in the Evansville, Vanderburgh County, Indiana area.

Watkins argues that this affidavit is insufficient under Walker v. State, 829 N.E.2d 591 (Ind. Ct. App. 2005), trans. denied, and Merritt v. State, 803 N.E.2d 257 (Ind. Ct. App. 2004). In those cases, the Court of Appeals rejected affidavits because they tied illegal drugs to a *person* who was selling them but not to the *place* to be searched. Walker, 829 N.E.2d at 595–96; Merritt, 803 N.E.2d at 260–61. In both cases, the affidavit alleged only that "an unidentified black male" had been seen at the place to be searched with what appeared to be illegal drugs. Id. Without facts showing that the unidentified person with the drugs frequented, lived at, or stored drugs at the place to be searched, there was no probable cause to believe that evidence of a crime would be found there. Id.

We agree with Watkins that affidavits must show probable cause that contraband or evidence is at the place to be searched, but we disagree that this one failed to do so. Instead of tying contraband to a perhaps-transient person—as the affidavits in Walker and Merritt did—this affidavit tied contraband to Watkins's exact home address. It also included a reliable confidential informant's observation of crack cocaine within the past three days at the place to be searched.

The affidavit thus provided a substantial basis for finding that the "particular *place* contains evidence of a crime." Membres, 889 N.E.2d at 275 (emphasis added). In other words, the warrant was based on a "practical, commonsense decision" that there was "a fair probability that contraband or evidence of a crime" would be found in Watkins's house. Query v. State, 745 N.E.2d 769, 771 (Ind. 2001) (quoting Gates, 462 U.S. at 238). Watkins has not overcome the warrant's presumption of validity, see Brock v. State, 540 N.E.2d 1236, 1239 (Ind. 1989), so we affirm.

9

**Conclusion**

The <u>Litchfield</u> test continues to serve us well, so we decline the State's invitation to replace it with an unprecedented "no reasonable officer" test for search warrant executions. Under the totality of the circumstances, the search warrant execution at Watkins's house did not violate Article 1, Section 11 of the Indiana Constitution. And the search warrant affidavit survives our deferential Fourth Amendment review because it provided a substantial basis for the probable cause finding. We therefore affirm the trial court.

David, Massa, Slaughter, and Goff, JJ., concur.