## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 28 2018, 9:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Roberto Bernal-Andraca, *Appellant-Defendant,* | November 28, 2018 |
| v. | Court of Appeals Case No. 18A-CR-1288 |
| | Appeal from the Marion Superior Court |
| State of Indiana, *Appellee-Plaintiff* | The Honorable Clayton A. Graham, Judge |
| | The Honorable Steven Rubick, Magistrate |
| | Trial Court Cause No. 49F07-1212-CM-85862 |

**Altice, Judge.**

## Case Summary

[1] Roberto Bernal-Andraca appeals his conviction for carrying a handgun without a license, a Class A misdemeanor. He contends that evidence of the gun found on his person during a traffic stop was obtained in violation of the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution. In light of the circumstances, we conclude that the officer conducting the stop acted reasonably, under both constitutions, in asking Bernal-Andraca to exit the vehicle. Accordingly, the evidence was properly admitted by the trial court.

[2] We affirm.

### Facts & Procedural History

[3] Around 3:30 a.m. on December 22, 2012, Indiana State Excise Police Officer Travis Thickstun was on patrol when he observed a vehicle being driven by Bernal-Andraca in Marion County. While driving behind the vehicle, Officer Thickstun checked the license plate and determined that it was registered to a different vehicle. He then initiated a stop.

[4] Officer Thickstun approached the vehicle and asked Bernal-Andraca – the sole occupant – for his driver's license and vehicle registration. He also explained to Bernal-Andraca the reason for the stop. Bernal-Andraca patted around on his clothing and eventually indicated (non-verbally) that "he didn't have it or couldn't find it." *Transcript* at 9. Bernal-Andraca then began searching through a black bag that was on the front passenger seat. Officer Thickstun saw several items in the bag that concerned him. In particular, he observed a collapsible

baton and pepper spray, as well as a flashlight with the word "police" on it and a set of handcuffs. At this point, Bernal-Andraca had yet to identify himself and had not indicated that he was a police officer (which he was not). Officer Thickstun asked Bernal-Andraca to step out of the vehicle.

[5] At trial, Officer Thickstun explained why he felt the need to have Bernal-Andraca come out of the vehicle. Officer Thickstun noted that he was the only officer on the scene and that he had yet to identify Bernal-Andraca or check the vehicle registration. Officer Thickstun explained: "I had him step out of the vehicle to get him away from the weapons that I saw, the pepper spray and the baton at the very least, to figure out who he was and to get his information to run him at that point." *Id*. at 12.

[6] As Bernal-Andraca exited the vehicle, he indicated to Officer Thickstun that he had a gun on his person. Officer Thickstun immediately had Bernal-Andraca face the vehicle and then located and removed the handgun from a holster on Bernal-Andraca's right hip. Officer Glen Bell arrived on the scene at this time and secured the semiautomatic handgun and removed the ammunition. Officer Thickstun handcuffed Bernal-Andraca and then turned his attention back to trying to identify him. After obtaining Bernal-Andraca's name and date of birth, Officer Thickstun was able to confirm that Bernal-Andraca was not a licensed driver. There was also no indication that Bernal-Andraca was licensed to carry a handgun. Officer Thickstun placed Bernal-Andraca under arrest.

Later that same day, the State charged Bernal-Andraca with carrying a handgun without a license and operating a vehicle having never received a license, both as Class A misdemeanors. Bernal-Andraca failed to appear for two separate hearings and was brought before the trial court on January 4, 2018, after being arrested on an unrelated matter. At the bench trial on May 17, 2018, Bernal-Andraca objected to the admission of any evidence (namely, the gun evidence) obtained after he was ordered out of the vehicle. He contended that this order constituted an unlawful seizure under both the federal and state constitutions. The trial court refused to suppress the evidence and ultimately found Bernal-Andraca guilty as charged. Bernal-Andraca was sentenced to concurrent terms of thirty days in jail. Bernal-Andraca now appeals, challenging the admission of the gun evidence.

## Discussion & Decision

### Standard of Review

The trial court has broad discretion when ruling on the admissibility of evidence. *Guilmette v. State*, 14 N.E.3d 38, 40 (Ind. 2014). On appeal, we review such rulings for an abuse of discretion and reverse only when admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights. *Id*. "But when an appellant's challenge to such a ruling is predicated on an argument that impugns the constitutionality of the search or seizure of the evidence, it raises a question of law, and we consider that question de novo." *Id*. at 40-41.

Bernal-Andraca argues the seizure violated both the Fourth Amendment and Article 1, Section 11. Although these constitutional provisions contain textually similar language, it is well established that they must be separately analyzed. *Graham v. State*, 971 N.E.2d 713, 716 (Ind. Ct. App. 2012), *trans. denied*. Thus, we will address each in turn.

## Fourth Amendment

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

A traffic stop is akin to an investigative stop pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968). Under *Terry*, the reasonableness of an investigative stop is measured by the officer's actions and whether those actions were "reasonably related in scope to the circumstances which justified the interference in the first place." *Id*. at 20; *see also Graham*, 971 N.E.2d at 716. The seizure must last no longer than necessary to effectuate the purpose of the stop and "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Graham*, 971 N.E.2d at 716 (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)). "As part of a valid *Terry* stop, the investigating officer is entitled to take reasonable steps to ensure his own safety, including ordering a detainee to exit the vehicle."

*Reinhart v. State*, 930 N.E.2d 42, 46 (Ind. Ct. App. 2010); *see also Pennsylvania* v. *Mimms*, 434 U.S. 106, 111 (1977) (describing the additional intrusion of ordering a driver lawfully stopped to get out of the car as "*de minimis*" and "at most a mere inconvenience").

[11] Bernal-Andraca does not contest the validity of the initial traffic stop; he challenges only the request that he get out of the vehicle, which he baldly asserts was for the purpose of performing a body search. Bernal-Andraca contends that Officer Thickstun should have merely instructed him to hand over the black bag or ordered him to raise his hands so that Thickstun could retrieve the bag. We disagree.

[12] After lawfully being stopped around 3:30 a.m., Bernal-Andraca failed to provide Officer Thickstun with a driver's license or a vehicle registration upon request. Bernal-Andraca then began searching through a black bag that contained, among other things, pepper spray and a baton. As Officer Thickstun explained at trial, he ordered Bernal-Andraca out of the vehicle "to get him away from the weapons" while Officer Thickstun – the only officer on the scene at that time – could work on obtaining identifying information. *Transcript* at 12. Thus, Officer Thickstun acted out of concern for his own safety and merely ordered Bernal-Andraca out of the vehicle. There is no indication in the record that Officer Thickstun intended to conduct a patdown search when he made this request or that the order was accompanied by any additional actions by Officer Thickstun, such as drawing his service weapon. *Cf. Reinhart*, 930 N.E.2d at 46 ("[Officer] did much more than merely order Reinhart to exit the

vehicle. [He] drew his weapon, ordered Reinhart to exit the vehicle at gunpoint, and, while the laser sight of his gun was fixed on Reinhart, [] ordered Reinhart to his knees with his hands behind his head….").  It was not until Bernal-Andraca indicated that he had a handgun on his person that Officer Thickstun searched and removed the handgun from a holster on Bernal-Andraca's hip.

[13]  We conclude that Officer Thickstun's decision to order Bernal-Andraca out of the vehicle was reasonable and did not violate the Fourth Amendment.  *See Mimms*, 434 U.S. at 111 n. 6 ("once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures"); *Ammons v. State*, 770 N.E.2d 927, 932 (Ind. Ct. App. 2002) ("the Fourth Amendment permits requesting a motorist stopped for a traffic violation to exit a car"), *trans. denied*.  Further, once informed that Bernal-Andraca was armed with a handgun, Officer Thickstun reasonably searched his person for that weapon and removed it.  *See Arizona v. Johnson*, 555 U.S. 323, 331 (2009) (once outside the stopped vehicle, the driver may be patted down for weapons if the officer reasonably concludes that the driver might be armed and dangerous).  There was no Fourth Amendment violation in this case.

**Article 1, Section 11**

Bernal-Andraca also asserts a violation of Article 1, Section 11 of the Indiana Constitution, which "safeguards the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure.'" *Watkins v. State*, 85 N.E.3d 597, 600 (Ind. 2017). An analysis under Article 1, Section 11 "turns on whether the police conduct was reasonable under the totality of the circumstances." *Carpenter v. State*, 18 N.E.3d 998, 1002 (Ind. 2014). In making this evaluation, we apply the test established by our Supreme Court in *Litchfield v. State*, 824 N.E.2d 356 (Ind. 2005). "The 'reasonableness of a search or seizure [turns] on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs.'" *J.G. v. State*, 93 N.E.3d 1112, 1122-23 (Ind. Ct. App. 2018) (quoting *Litchfield*, 824 N.E.2d at 361) (alteration in *J.G.*), *trans. denied*.

We conclude that Officer Thickstun acted reasonably under the circumstances and, thus, find no violation of Article 1, Section 11. The degree of concern, suspicion, or knowledge that a violation had occurred was high. Bernal-Andraca was driving a vehicle with a questionable license plate, he could not produce a driver's license or vehicle registration, and he had a bag containing items that could be used against Officer Thickstun during the lawful stop. The degree of the intrusion – ordering him out of the vehicle – was minimal. Further, Officer Thickstun needed to be able to safely investigate the lawful stop. It was 3:30 in the morning, Officer Thickstun was alone, and he had

observed items next to Bernal-Andraca that could be used against him as weapons. Removing Bernal-Andraca from the vehicle was reasonable under the totality of the circumstances. Moreover, once Bernal-Andraca indicated that he was armed with a handgun, Officer Thickstun acted reasonably in locating the weapon and removing it from Bernal-Andraca's person before continuing his investigation.

[16] In sum, Officer Thickstun did not violate Bernal-Andraca's federal or state constitutional rights by ordering him out of the vehicle and then, after being informed that Bernal-Andraca was armed, patting him down to retrieve the weapon. The challenged evidence was, therefore, properly admitted at trial.

[17] Judgment affirmed.

Brown, J. and Tavitas, J., concur.