


FILED

May 01 2018, 10:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Indiana Supreme Court

Supreme Court Case No. 49S04-1710-CR-653

## Brandon McGrath
*Appellant (Defendant)*

–v–

## State of Indiana
*Appellee (Plaintiff)*

Argued: November 9, 2017 | Decided: May 1, 2018

Appeal from the Marion Superior Court 14, No. 49G14-1404-FD-21182
The Honorable Jose D. Salinas, Judge

On Petition to Transfer from the Indiana Court of Appeals,
No. 49A04-1610-CR-2270

**Opinion by Justice Massa**

Chief Justice Rush, Justice David, Justice Slaughter, and Justice Goff concur.

**Massa, Justice.**

After conducting an independent investigation to corroborate an anonymous tip of a potential marijuana grow operation at a private residence, police requested and received a warrant to conduct a thermal-imaging search of the home. Evidence led police to request a second warrant to search the physical premises, leading to the discovery of the alleged criminal activity and the arrest and conviction of Brandon McGrath for one count of dealing in marijuana and one count of marijuana possession, both Class D felonies. McGrath challenged both warrants for lack of probable cause—the first for failure to corroborate the tipster's allegation of criminal activity, and the second for relying on a fellow officer's hearsay observations of the thermal-imaging search.

Because we find that, under the totality of the circumstances, probable cause supported both warrants, we affirm the trial court's decision to uphold the rulings of the issuing magistrates.

# Facts and Procedural History

In April 2014, an anonymous tipster alerted the Indianapolis Metropolitan Police Department of a possible marijuana grow operation at a private residence located at 5926 North Crittenden Avenue. In addition to describing the color of the house and noting its street address, the informant identified the occupants by their first names: Brandon and Kelsey. The informant further reported a bright light visible from a window at night and that the odor of marijuana often emanated from the premises.

Acting on this information, IMPD Detective Sergeant Kerry Buckner investigated the home, first verifying its color and address. While conducting daytime surveillance, the detective noted several windows with dark coverings and two air-conditioning units on the upper floor independent of the home's central air system. At night, the detective observed a "high intensity glow" emitting from an upstairs covered window. App. Vol. II p.16. He could not, however, corroborate the odor of marijuana. Finally, by searching police records and BMV databases, both

unavailable to the public, Detective Buckner identified Kelsey Bigelow as the homeowner and Brandon McGrath as a resident.

Having partially corroborated the informant's tips, Detective Buckner then requested a search warrant for a "forward looking infrared" (FLIR) device, an aircraft-mounted thermal imaging camera used "to detect the presence of a heat signature commensurate with an indoor marijuana growing operation." *Id.* at 17. In his probable-cause affidavit, Detective Buckner explained the thermal imaging process and outlined in detail the circumstances of the investigation, including the anonymous tip and the information gathered from his own surveillance. The affidavit further described the detective's training and experience in narcotics investigation, his experience with other officers "trained in the use of thermal image technology," and the elaborate processes of marijuana cultivation and the methods by which suspects attempt to evade law enforcement detection of their operations. *Id.* at 14.

Upon approval of the FLIR warrant, Detective Michael Condon and Sergeant Edwin Andresen executed the thermal-imaging search. During the inspection, Detective Condon reported an atypical heat signature emanating from the home. Armed with this supplemental evidence, Detective Buckner requested and received a second warrant to search the physical premises. In his sworn statement—which referenced the first affidavit and incorporated many of its details—Detective Buckner related Detective Condon's observations of the FLIR search as "consistent with the heat signature put off by lights used to grow marijuana indoors." *Id.* at 26. However, the second affidavit contained no information describing Detective Condon's training and experience.

A search of the house revealed an extensive marijuana grow operation, resulting in the seizure of 180 individual plants, heat lamps, plant fertilizer, dehydrators, drying racks, and deodorizing machines. Police

arrested McGrath and the State charged him with one count of dealing in marijuana and one count of marijuana possession, both Class D felonies.[1]

At trial, McGrath moved to suppress the seized evidence, challenging the search warrants under the Fourth Amendment to the U.S. Constitution and Article 1, Section 11 of the Indiana Constitution. McGrath argued that both warrants lacked probable cause—the first for failure to establish the informant's credibility or corroborate the anonymous tip, and the second for relying on Detective Condon's hearsay observations of the FLIR search.

The trial court denied the motion to suppress, admitted the seized evidence over McGrath's objection, and found McGrath guilty as charged. The court stayed McGrath's sentencing pending appeal.

A divided Court of Appeals reversed McGrath's conviction, finding the first search warrant lacked probable cause due to insufficient evidence corroborating the informant's allegation of criminal activity. *McGrath v. State*, 81 N.E.3d 655, 668–69 (Ind. Ct. App. 2017), *vacated*. The majority concluded that the detective's training and experience, "[h]owever impeccable," was insufficient to convert the innocuous circumstances he observed—the window coverings, the A/C units, and the distinct lighting—into objective factors establishing probable cause of criminal activity. *Id.* at 668. The dissent, without reaching the question of probable cause, would have applied the good faith exception "to render the evidence collected from [the] residence admissible." *Id.* at 669.

The State petitioned for transfer, which we granted, thus vacating the Court of Appeals decision. Ind. Appellate Rule 58(A).

## Standard of Review

This case involves two judicial rulings: the magistrate's finding of probable cause to issue the warrant and the trial court's decision to

---

[1] Ind. Code § 35-48-4-10 (2012) (dealing); I.C. § 35-48-4-11 (possession).

uphold that finding. We review the latter ruling de novo but apply a deferential standard to the former, affirming the magistrate's decision to issue the warrant if a "substantial basis" existed for finding probable cause. *Watkins v. State*, 85 N.E.3d 597, 599 (Ind. 2017).

# Discussion and Decision

Under the Fourth Amendment to the U.S. Constitution, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. To preserve that right, a judicial officer may issue a warrant only "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Id.* Article 1, Section 11 of the Indiana Constitution contains language nearly identical to its federal counterpart. And our statutory law codifies these constitutional principles, setting forth the requisite information for an affidavit to establish probable cause. *See* Ind. Code § 35-33-5-2 (2008).

## I.  Probable Cause Based on Hearsay

A probable-cause affidavit "need not reflect the direct personal observations of the affiant" but may instead rely on hearsay information. *Aguilar v. Texas*, 378 U.S. 108, 114 (1964), *abrogated on other grounds by Illinois v. Gates*, 462 U.S. 213 (1983). For if the standard rules of evidence applied, "few indeed would be the situations in which an officer, charged with protecting the public interest by enforcing the law, could take effective action" toward establishing probable cause. *Brinegar v. United States*, 338 U.S. 160, 174 (1949).

Of course, not all hearsay amounts to probable cause. To the contrary, there must be some "reliable information establishing the credibility of the source" and "a factual basis for the information furnished." I.C. § 35-33-5-2(b)(1). Alternatively, a probable-cause affidavit must contain information

that, under the totality of the circumstances, corroborates the hearsay. *Id.* §
35-33-5-2(b)(2).[2]

McGrath challenges both warrants for lack of probable cause based on
uncorroborated hearsay in the underlying affidavits. We address each
warrant in turn.

## A. Under the totality of the circumstances, the FLIR affidavit contained sufficient evidence to corroborate the anonymous tip.

McGrath first argues that, because Detective Buckner failed to detect
the odor of marijuana near the home, the affidavit supporting the FLIR
warrant lacked sufficient evidence to corroborate the anonymous tip of
criminal activity.[3] The detective's training and expertise, McGrath asserts,
could not "convert the innocuous circumstances he observed into
particularized and objective factors giving rise to a probable cause of
criminal activity." Response to Pet. to Trans. at 9.

The State counters that the window coverings, the A/C units, and the
distinct lighting—taken together—proved sufficiently indicative of a

---

[2] Subsection (b)(1), introduced in a 1977 amendment to the predecessor statute, codified the
two-prong test set forth in *Aguilar v. Texas*, 378 U.S. 108 (1964) and *Spinelli v. United States*, 393
U.S. 410 (1969). *See Jaggers v. State*, 687 N.E.2d 180, 183 n.2 (Ind. 1997) (tracing the statute's
history). The U.S. Supreme Court in *Illinois v. Gates* abandoned the *Aguilar-Spinelli* test in lieu
of the "totality-of-the-circumstances analysis that traditionally has informed probable cause
determinations." 462 U.S. 213, 238 (1983). The current subsection (b)(2), added in 1984, reflects
the analysis set forth in *Gates*. *Jaggers*, 687 N.E.2d at 183 n.2. Subsection (b)(1) survives, the
elements of which—although no longer "independent requirements to be rigidly exacted"—
remain "highly relevant" in determining probable cause under the totality of the
circumstances. *Gates*, 462 U.S. at 230. In analyzing the overall reliability of a tip, a deficiency in
one factor "may be compensated for . . . by a strong showing as to the other, or by some other
indicia of reliability." *Id.* at 233.

[3] As with physical searches, the Fourth Amendment requires a warrant for the use of thermal
imaging scanners such as the one used here. *Kyllo v. United States*, 533 U.S. 27, 40 (2001)
("Where . . . the Government uses a device that is not in general public use, to explore details
of the home that would previously have been unknowable without physical intrusion, the
surveillance is a 'search' and is presumptively unreasonable without a warrant.").

marijuana grow operation to establish probable cause of criminal activity. By focusing on these otherwise mundane facts in isolation, and by ignoring the detective's relevant training and experience, the State contends, a court could find probable cause lacking in virtually any situation.

We agree with the State.

An anonymous tip cannot, standing alone, support a finding of probable cause. *Jaggers v. State*, 687 N.E.2d 180, 182 (Ind. 1997) (citing *Gates*, 462 U.S. at 227). Instead, the reliability of hearsay from a source of unknown credibility depends on other factors, including (1) the basis of the informant's knowledge or (2) corroboration through independent police investigation. *Id*. Other elements may come into play depending on the facts of the case.[4]

Ultimately, the task of a magistrate in deciding whether to issue a search warrant "is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 181 (citing *Gates*, 462 U.S. at 238). We focus on whether the reasonable inferences drawn from the totality of the evidence support the finding of probable cause. *Id.* Rather than consider *post hoc* justifications for the search, we evaluate only the evidence presented to the issuing magistrate. *Seltzer v. State*, 489 N.E.2d 939, 941 (Ind. 1986).

Here, the informant reported having observed the criminal activity firsthand, thus entitling the tip to "greater weight than might otherwise be the case." *Gates*, 462 U.S. at 234; *id.* at 268 n.20 (White, J., concurring) (noting that the "basis of knowledge prong is satisfied by a statement from the informant that he personally observed the criminal activity") (internal quotation marks omitted); *see also Matter of M.R.D.*, 482 N.E.2d

---

[4] These factors may include the informant's past reliability in supplying information to police, or the informant's accurate prediction of otherwise unforeseeable criminal activity. *Jaggers*, 687 N.E.2d at 182.

306, 309 (Ind. Ct. App. 1985) (noting that an informant's firsthand observations may relate to sight, sound, touch, or smell).

Detective Buckner then conducted an independent investigation to confirm the street address, the color of the house, the names of the occupants, and the bright light. We acknowledge that some of these facts were plainly evident. *See Sellmer v. State,* 842 N.E.2d 358, 362 (Ind. 2006) (tip identifying the suspect's car "provided the police with no information that was not already easily knowable by a member of the general public"). But not all of them were obvious: the address was obscured and there was no evidence of Brandon and Kelsey's occupancy in the public domain.

Beyond these facts, Detective Buckner's additional observations further corroborated the tipster's allegations. As he explained in his affidavit, covered windows are used to conceal evidence of criminal activity. And the "high intensity glow," he determined, was "consistent with light that emits from High Pressure Sodium light and Metal Halide lights" used for indoor grow operations. App. Vol. II p.37. With this in mind, the separate A/C units, he concluded, functioned to offset the high temperatures produced by the artificial lighting.

These facts, when viewed discretely, are certainly prone to innocent explanation. But "this kind of divide-and-conquer approach is improper." *District of Columbia v. Wesby*, —— U.S. ——, 138 S. Ct. 577, 589 (2018). Instead, we must look at "the whole picture." *Id.* When viewed collectively, and in the context of Detective Buckner's training and experience, these facts are sufficiently indicative of a marijuana grow

operation. *See Gates*, 462 U.S. at 243 n.13 (innocent activity or behavior will often establish a basis for probable cause).[5]

We thus conclude that a "substantial basis" existed to support the magistrate's decision to issue the FLIR warrant.

## B. Under the collective-knowledge doctrine, the second affidavit contained sufficient information to establish probable cause.

Next, McGrath argues that the second probable-cause affidavit fails for lack of information corroborating Detective Condon's hearsay observations of the FLIR search. McGrath specifically points to the absence of (1) a statement detailing Detective Condon's training and experience and (2) a description of the FLIR system itself—"how it works, its accuracy, its ranges, its calibrations, and the age of the machine." Appellant's Br. at 21.

The State counters that an independent corroboration of Detective Condon's statements was unnecessary. Rather, the State insists, Detective Buckner properly relied on information from a fellow officer under the collective-knowledge doctrine. McGrath rejects this argument, asserting that such an exception to the hearsay requirement relates only to reasonable suspicion in the context of an investigative stop.

Again, we agree with the State.

---

[5] McGrath would have us disregard the detective's training and experience in determining the existence of probable cause. But state and federal courts have "long recognized the police officer's investigatory insight in evaluating probable cause." Anna Lvovsky, *The Judicial Presumption of Police Expertise*, 130 Harv. L. Rev. 1995, 2026–27 (2017) (citing cases). Indiana is no exception, as our courts are consistently "deferential to police officer training and experience." *Denton v. State*, 805 N.E.2d 852, 856 (Ind. Ct. App. 2004), *trans. denied*. Otherwise, "there would be little merit in securing able, trained [officers] to guard the public peace if their actions were to be measured by what might be probable cause to an untrained civilian." 2 Wayne R. LaFave, *Search & Seizure: A Treatise on the Fourth Amendment* § 3.2(c) (5th ed. 2017) (internal quotations omitted).

The collective- or imputed-knowledge doctrine is well settled in Indiana and, contrary to McGrath's assertion, applies to both investigative stops and search warrants. *See State v. Gray*, 997 N.E.2d 1147, 1153 (Ind. Ct. App. 2013), *trans. denied* ("[A]n arrest or search is permissible where the actual arresting or searching officer lacks the specific information to form the basis for probable cause or reasonable suspicion but sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation.") (citing *United States v. Colon*, 250 F.3d 130, 135–36 (2nd Cir. 2001)). So long as fellow officers applying for a search warrant collectively have probable cause, "their individual knowledge can be imputed to the officer signing the affidavit in support of the search warrant." *Utley v. State*, 589 N.E.2d 232, 236 (Ind. 1992).

Unlike the hearsay requirement of the warrant statute, designed to ensure an informant's veracity, the collective-knowledge doctrine presumes a fellow officer's credibility, thus "no special showing of reliability need be made as a part of the probable cause determination." 2 Wayne R. LaFave, *Search & Seizure: A Treatise on the Fourth Amendment* § 3.5(a) (5th ed. 2017). *See also United States v. Ventresca*, 380 U.S. 102, 111 (1965) ("Observations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number."); *Moody v. State*, 448 N.E.2d 660, 663 (Ind. 1983) (rejecting theory that information from out-of-state police department amounts to "no more than an anonymous tip from an informant of unproven reliability").

In his second affidavit, Detective Buckner clearly stated that he had applied for and received a warrant to conduct the FLIR search. He further specified that Detective Condon and Sergeant Andresen executed the search, the results of which—according to Condon and as related by Detective Buckner—revealed a heat signature consistent with an indoor marijuana grow operation. While the affidavit failed to disclose Detective Condon's training and experience, the magistrate could reasonably have inferred the detective's expertise in conducting the FLIR search based on

Detective Buckner's tacit endorsement of his fellow-officer's work.[6] *See Jaggers*, 687 N.E.2d at 181–82 (a reviewing court looks for "whether reasonable inferences drawn from the totality of the evidence support the determination of probable cause") (internal quotation marks omitted).

Finally, the absence of a statement detailing the accuracy of the FLIR device, or the method by which it operates, is of no consequence here. Evidence of probable cause—whether based on an anonymous tip or an officer's technological tools—need not meet the more rigorous standard of proof in establishing guilt. *See State v. Johnson*, 503 N.E.2d 431, 433 (Ind. Ct. App. 1987), *trans. denied* (concluding that, while an unapproved breathalyzer test "would not have been admissible *at trial*," it could be used to establish probable cause).

For the reasons above, we conclude that the second magistrate had a "substantial basis" for issuing the warrant to search the physical premises of McGrath's residence.

# Conclusion

Because we find that probable cause supported both warrants, we affirm the trial court's decision to uphold the rulings of both magistrates.[7]

Rush, C.J., and David, Slaughter, and Goff, JJ., concur.

---

[6] This conclusion is further bolstered by the fact that the first affidavit, incorporated by reference in the second affidavit, describes Detective Buckner's experience with officers "trained in the use of thermal image technology." App. Vol. II p.14.

[7] McGrath also argues that by omitting key facts from the affidavit—namely, evidence of other nearby homes with window coverings and multiple A/C units—the detective misled the magistrate into finding McGrath's home uniquely indicative of a marijuana grow operation. For this reason, he insists, the good-faith exception to the exclusionary rule should not apply. Because we conclude that the affidavits upon which the warrants relied contained sufficient indicia of probable cause, this issue is moot.

ATTORNEYS FOR APPELLANT

Brian J. Johnson
Danville, Indiana

Todd L. Sallee
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Indiana Attorney General

Laura R. Anderson
Ellen H. Meilaender
Deputy Attorneys General
Indianapolis, Indiana