## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 19 2019, 9:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Derick W. Steele
Deputy Public Defender
Kokomo, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.,
Attorney General of Indiana

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Gary Cooper,

*Appellant-Defendant*,

v.

State of Indiana,

*Appellee-Plaintiff*.

March 19, 2019

Court of Appeals Case No.
18A-CR-1820

Appeal from the Howard Superior Court

The Honorable William C. Menges, Jr., Judge

Trial Court Cause No.
34D01-1610-F6-1117

**Brown, Judge.**

[1] Gary Cooper appeals his convictions for maintaining a common nuisance and possession of paraphernalia as level 6 felonies. He raises one issue which we revise and restate as whether the trial court abused its discretion in admitting certain evidence.[1] We affirm.

*Facts and Procedural History*

[2] On October 26, 2016, Kokomo Police Officer Nate Gibson signed an Affidavit for Search Warrant which states in part:

> The affiant is a 4.5 year veteran of the Kokomo Police Department. The Affiant is a Patrol Officer for the Kokomo Police Department. The Affiant affirms under the pains and penalties of perjury that this statement is true and accurate to the best of my knowledge and belief.
>
> On today's date 10/26/2016, I Officer N. Gibson #405 was on duty in a full marked patrol vehicle conducting surveillance on the above residence 2548 N. Buckeye Kokomo, IN due to having several anonymous drugs complaints of Gary Cooper living there and is believed to be in involved [sic] drug activity.
>
> I drove past 2548 N. Buckeye Kokomo, IN and observed a 2007 Dodge Nitro in front of the residence. The Dodge bearing Indiana driver's license plate of VV1990 which the BMV file returned back to Gary Cooper. I then parked (1) city block away from the 2548 N Buckeye residence and later watched and identified Gary Cooper walked [sic] out from the residence along with a white female and a black male. Gary then drove north on Buckeye St and turned left on or west onto Gerhardt St Kokomo,

---

[1] In his statement of issues, Cooper lists a second issue as whether the trial court erred in sentencing him. However, Cooper does not mention the sentencing order in his argument section or develop any argument regarding his sentence.

IN without signaling the turn. I then initiated a traffic stop with the Dodge Nitro and identified Gary Cooper as the driver. The front seat passenger was identified as Sheena Jones (DOB: 11-25-85) and Kenneth Bradley (DOB: 11-8-1973) as the backseat passenger. I immediately observed Kenneth holding onto a clear plastic bag which appeared to be plant like material. I asked Kenneth to step out of the Nitro where he was placed into handcuffs. I then asked him where the baggie was in his hand and he said he stuffed it in the seat. I located that clear plastic baggie containing plant like material that later field tested positive for Marijuana in the back seat where Kenneth stated the baggie was at. I also located a large amount of US currency on Kenneth which was later counted in the presence of myself along with Officer Toth which totaled $1,460.00 of US currency. I asked Gary what his current address was and he told me 2548 N Buckeye. I asked Gary where they were heading to tonight and he stated they just had left his residence and was taking Kenneth to work at Olive Garden. I asked Gary if there was anyone else back at his residence and he stated maybe a female but that should be it. Gary told me he had only been living at 2548 N Buckeye for a short time now.

While on the traffic stop K9 Officer C. Fourkiller arrived and utilized his K-9 Maxwell to conduct an exterior sniff around the vehicle. Officer Fourkiller informed me Maxwell gave a positive alert on the vehicle. I searched the vehicle and later found spice in the female's purse. All individuals inside the vehicle where [sic] later taken into custody. Indiana State Trooper Kyle Miller arrived and stood by on the traffic. I then asked Trooper Miller if he could go to the residence of 2548 N Buckeye and stand by on the residence while I went back to the Police station to type up a search warrant and he did. While waiting on Martins wrecker service, Kokomo dispatch advised ISP was code 10 at the 2548 N Buckeye residence. I arrived and Trooper Miller advised a female came to the door and while talking with her at the front door of 2548 N Buckeye he observed a white male standing near the kitchen area without a shirt on. For his safety he asked him

to come to the door to talk to him which he started to then he [sic] took off towards a bedroom. Trooper Miller stated for his safety he ran in after the male and watch him grab something from underneath a bed mattress. Trooper Miller was unable to see what he had grabbed. Trooper Miller tried grabbing the male where the male later was able to resist Trooper Miller and get away out the back door along with the female.

Defendant's Exhibit A. Officer Gibson also prepared a search warrant which specified a search for "Marijuana, and illegal drug paraphernalia, ledgers, cell phones, computers and packaging materials such as baggies, Monies, and any other items associated with the use, manufacture, and sales of Marijuana . . . ." State's Exhibit 3. That same day, Judge Douglas Tate signed the search warrant.

[3] Officer Gibson executed the search warrant and found a digital scale, a plastic baggie containing a gray rock-like substance that later tested positive for methamphetamine, a cell phone, a syringe with liquid in it which tested positive for methamphetamine, other digital scales with residue on them which tested positive for methamphetamine in another room, drug paraphernalia, smoking devices, mail addressed to Cooper, and checks with Cooper's name.

[4] On October 27, 2016, the State charged Cooper with: Count I, possession of methamphetamine as a level 6 felony; Count II, maintaining a common nuisance as a level 6 felony; Count III, unlawful possession of a syringe as a level 6 felony; and Count IV, possession of paraphernalia as a class C misdemeanor.

On May 18, 2017, Cooper filed a motion to suppress any evidence seized as a result of the search of his residence. On September 22, 2017, the court held a hearing on Cooper's motion, and Officer Gibson testified. At the conclusion of the hearing, the court stated:

> Well, I think if we look at the affidavit there is a nexus between the car being driven by Gary Cooper, passengers and the house and that all three of those individuals had just left the house. The Defendant's arguments become much more interesting and I think much more compelling if the affidavit itself bears that out, but the affidavit goes on to talk about what Trooper Miller observed between the traffic stop and when the warrant was actually signed and issued. . . . And the real question is, and really does I think go to the parameters established by *United State v. Leon*, as to whether or not there is a, you know, even if there were, even if the affidavit is bad, whether or not a good faith acceptance [sic] should apply.
>
> * * * * *
>
> There has been no evidence whatsoever to indicate any bad faith on the part of Officer Gibson or any evidence not contained in the affidavit or anything else that he knew or should have known, that Judge Tate would have found a different result, and Judge Tate validated and gave him a search warrant. I think that Officer Gibson was acting in good faith when he served it.

Transcript Volume II at 49-50. The court denied Cooper's motion to suppress.

At the jury trial, Officer Fourkiller testified that he arrived at the scene of the traffic stop and conducted a drug sniff on the exterior portion of the car using his canine who alerted. Officer Gibson testified that he observed Cooper's residence in the early afternoon of October 26, 2016, saw three people including

Cooper and Bradley walk out of the residence, go straight to a Dodge Nitro, enter the vehicle, travel north on Buckeye Street, and make a left turn without using a turn signal. He testified that he conducted a traffic stop, observed that Bradley kept fidgeting with an item in his hand that he was able to see was a knotted clear plastic bag with what appeared to be plant material inside, asked Bradley to step out of the vehicle, and placed Bradley in handcuffs. Officer Gibson testified that he conducted a search of the vehicle and found a vial of plant material inside of Jones's purse. He also testified that "[t]he baggie that was on Kenneth Bradley in the back seat, that was also found but, as I said earlier in the traffic stop when he was fumbling around with something in his hand, I found the plant-like material in the plastic bag in the back, in the rear seat of the vehicle that he was set next, that was next to." *Id.* at 88. Cooper's counsel objected when the prosecutor began asking questions regarding the search of the residence, and the court overruled the objection and indicated it would show a continuing objection.

[7] On cross-examination, Officer Gibson testified that spice was taken from Jones and that there was no contraband on Cooper at the scene of the traffic stop. He also testified that Trooper Kyle Miller went to the house to secure it while he went for the warrant, a female came to the door after Trooper Miller knocked, Trooper Miller saw a white male standing back by the kitchen, Trooper Miller asked that man to come to the door, and the man ran into the bedroom, grabbed something, and ran.

[8] After the State rested, Cooper testified that he did not know that contraband was in the dresser where he kept his clothes and stuff. He testified that the scales were not in the house when he left and that he had been living there for about two weeks. He stated that before he was pulled over he picked up Bradley to take him to work and that they subsequently stopped to see if Jones wanted "to ride out there and back with [him]." *Id.* at 128. He testified that they "had about a half hour extra time or thirty minutes or something, forty minutes extra, so we stopped back by where I was staying at Cathy's house there." *Id.* He stated that Cathy Hood was the person who owned the house where he was staying, and that he and his passengers were at the residence for ten of fifteen minutes when Jamie Botnick and William Hancock arrived. He stated that, when he left to give Bradley a ride to work, Hood, Hancock, Botnick, and Jesse Lawless remained at the residence, that he did not place any drugs in the house, did not place any drugs near the checkbooks, did not see anybody take drugs in his house before he left, and did not know that his passengers had drugs on them.

[9] The jury found Cooper guilty of Count II, maintaining a common nuisance, and Count IV, possession of paraphernalia, and not guilty of the remaining counts. The court sentenced Cooper to 913 days executed.

## *Discussion*

[10] The issue is whether the trial court erred in admitting certain evidence. Although Cooper originally challenged the admission of the evidence through a motion to suppress, he now challenges the admission of the evidence at trial.

Thus, the issue is appropriately framed as whether the trial court abused its discretion by admitting the evidence. *See Guilmette v. State*, 14 N.E.3d 38, 40 (Ind. 2014). "Because the trial court is best able to weigh the evidence and assess witness credibility, we review its rulings on admissibility for abuse of discretion and reverse only if a ruling is 'clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights.'" *Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014) (quoting *Clark v. State*, 994 N.E.2d 252, 260 (Ind. 2013)). "[T]he ultimate determination of the constitutionality of a search or seizure is a question of law that we consider de novo." *Id.*

[11] In ruling on admissibility following the denial of a motion to suppress, the trial court considers the foundational evidence presented at trial. *Id.* If the foundational evidence at trial is not the same as that presented at the suppression hearing, the trial court must make its decision based upon trial evidence and may consider hearing evidence only if it does not conflict with trial evidence. *Guilmette*, 14 N.E.3d at 40 n.1. To the extent that we review the court's finding of probable cause to issue the warrant, we apply a deferential standard of review, "affirming the . . . decision to issue the warrant if a 'substantial basis' existed for finding probable cause." *McGrath v. State*, 95 N.E.3d 522, 527 (Ind. 2018) (quoting *Watkins v. State*, 85 N.E.3d 597, 599 (Ind. 2017)).

[12] Under the Fourth Amendment to the U.S. Constitution, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against

unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV. To preserve that right, a judicial officer may issue a warrant only "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Id.* "Article 1, Section 11 of the Indiana Constitution contains language nearly identical to its federal counterpart." *McGrath*, 95 N.E.3d at 527. "And our statutory law codifies these constitutional principles, setting forth the requisite information for an affidavit to establish probable cause." *Id.* (citing Ind. Code § 35-33-5-2 (2008)).

[13] The existence of probable cause is evaluated pursuant to the "totality-of-the-circumstances" test. *Eaton v. State*, 889 N.E.2d 297, 299 (Ind. 2008) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983)), *reh'g denied*, *cert. denied*, 556 U.S. 1185, 129 S. Ct. 1986 (2009). Probable cause exists "when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id.* (quoting *U.S. v. Grubbs*, 547 U.S. 90, 95, 126 S. Ct. 1494, 1499 (2006) (quoting *Gates*, 462 U.S. at 238, 103 S. Ct. 2317)). Significantly, "probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* (quoting *Gates*, 462 U.S. at 245 n. 13, 103 S. Ct. 2317). The trial court's task is to determine whether there is a fair probability that contraband or evidence of a crime will be found in a particular place, while a reviewing court must ensure that the magistrate had a substantial basis for concluding that probable cause existed. *Id.* (quotations and citations omitted).

[14] Cooper argues that the search warrant affidavit lacked sufficient probable cause. He cites *Hensley v. State*, 778 N.E.2d 484 (Ind. Ct. App. 2002), and argues that "[l]ike *Hensley*, the alleged criminal conduct, possession of contraband by two passengers in Cooper's vehicle, creates little, to no, link to Cooper's home." Appellant's Brief at 7. He also argues that the good faith exception does not apply because no objective person could see the link between two passengers in a vehicle possessing drugs and the search of the driver's home. The State argues that it presented sufficient facts, together with reasonable inferences, that created a nexus between criminal drug activity and Cooper's home and that *Hensley* is distinguishable.

[15] To the extent the affidavit asserted several anonymous complaints, we note that "[a]n anonymous tip cannot, standing alone, support a finding of probable cause." *McGrath*, 95 N.E.3d at 528. "Instead, the reliability of hearsay from a source of unknown credibility depends on other factors, including (1) the basis of the informant's knowledge or (2) corroboration through independent police investigation." *Id.* "Other elements may come into play depending on the facts of the case." *Id.* These factors may include the informant's accurate prediction of otherwise unforeseeable criminal activity. *Id.* at 528 n.4.

[16] In *Hensley*, we held a probable cause affidavit was insufficient to support a search warrant because the affidavit failed to link the house to the drug sale. We explained that the affidavit "merely contain[ed] a description of a home and an allegation that [the defendant] had purchased methamphetamine the previous day." *Hensley*, 778 N.E.2d at 488. Accordingly, we held that "the

affidavit is completely devoid of any information describing why [the officer] had good cause to believe that the drugs would be found in the described premises." *Id.*

[17] Unlike in *Hensley*, the affidavit described a connection between the described premises and drug activity. Specifically, Officer Gibson's affidavit asserted that: he was conducting surveillance on a specific residence due to several anonymous drug complaints about Cooper who lived at the residence; he observed the Dodge Nitro in front of the residence which belonged to Cooper; Cooper drove away from the residence with Bradley and Jones; upon stopping the vehicle for a traffic infraction, he observed Bradley in possession of a clear plastic bag that field tested positive for marijuana; he located $1,460 on Bradley's person; a police canine gave a positive alert on Cooper's vehicle; Cooper's other passenger, Jones, possessed spice in her purse; that Cooper stated "maybe a female but that should be it" when asked if there was anyone back at his residence; and that, when Trooper Miller went to the residence, a male "took off towards a bedroom," grabbed something from underneath a mattress, and fled the residence. Defendant's Exhibit A. We also observe that Officer Gibson testified that he observed Cooper, Jones, and Bradley leave Cooper's residence and never lost sight of them when he made the traffic stop. In light of the record, we conclude that a substantial basis existed to support the court's decision to issue the search warrant and that the trial court did not abuse its discretion by admitting the evidence.

Even assuming that a lack of probable cause existed, we cannot say that reversal is warranted. "The lack of probable cause does not automatically require the suppression of evidence obtained during a search conducted pursuant to a warrant." *Jackson v. State*, 908 N.E.2d 1140, 1143 (Ind. 2009). In *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405 (1984), the United States Supreme Court determined that the exclusionary rule does not require the suppression of evidence obtained in reliance on a defective search warrant if the police relied on the warrant in objective good faith. The good faith exception is not available in some situations, including where (1) the magistrate is "misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth," or (2) the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Jackson*, 908 N.E.2d at 1143 (quoting *Leon*, 468 U.S. at 923, 104 S. Ct. 3405). The good faith exception to the warrant requirement has been codified by Ind. Code § 35-37-4-5.

Cooper does not argue that that the judge was misled by information in the affidavit Officer Gibson knew was false or would have known was false except for his reckless disregard for the truth. Rather, Cooper argues that "as in *Hensley*, no objective person could see the link between two passengers in a vehicle possession [sic] drugs, and the search of the driver's home." Appellant's Brief at 8. As explained above, the record includes additional support for the search besides the mere possession of drugs by passengers. We conclude that

the search warrant was not based upon an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable and that the good faith exception to the exclusionary rule is applicable. The trial court did not abuse its discretion in admitting the evidence discovered at the residence.

[20] For the foregoing reasons, we affirm Cooper's convictions.

[21] Affirmed.

Bailey, J., and Bradford, J., concur.