FILED

Dec 17 2025, 8:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



# IN THE
# Court of Appeals of Indiana

Anthony W. Thompson,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

December 17, 2025

Court of Appeals Case No.
25A-CR-80

Appeal from the Madison Circuit Court

The Honorable Mark K. Dudley, Judge

Trial Court Cause No.
48C06-2307-F4-2143

---

**Opinion by Judge Mathias**
Judges Kenworthy and Felix concur.

**Mathias, Judge.**

[1] The Madison Circuit Court found Anthony Thompson guilty of Level 5 felony possession of methamphetamine and three counts of Level 4 felony unlawful possession of a firearm by a serious violent felon. Prior to his bench trial, Thompson filed a motion to suppress evidence found in his residence during the execution of a search warrant and argued that the warrant was not supported by probable cause. The court denied his motion to suppress. Thereafter, Thompson objected to the admission of this evidence during his bench trial and made the same arguments that were raised in his motion to suppress. The trial court admitted the evidence over Thompson's objection. The sole issue presented in this appeal is whether the search warrant was supported by probable cause.[1]

[2] We affirm.

## Facts and Procedural History

[3] In 2023, law enforcement officers assigned to the Madison County Drug Task Force were investigating Lamont Moore for suspected drug dealing. During a controlled buy in June, the officers observed Moore riding in a silver Dodge Ram pickup truck. The tint on the windows made it difficult to see the driver and the officers could not identify the driver. The officers witnessed the

---

[1] We held oral argument in this case at Hamilton Southeastern High School in the Mary Armstrong Little Theater in Fishers, Indiana. We extend our sincere gratitude to the faculty and staff, and especially teachers Janet Chandler and Gaye Garret and Principal Dr. Craig McCaffrey.

controlled buy and then followed the pickup truck until it reached West 18th Street in Anderson. An officer ran the truck's license plate and discovered the truck was registered to Thompson.

[4] On July 13, law enforcement officers were performing surveillance and saw Moore leaving his home in his Camaro. While driving on Raible Avenue, Moore pulled up behind Thompson's pickup truck. Moore then followed the truck at a slow speed until the truck pulled into the driveway of a residence located at 2806 West 18th Street, which was Thompson's residence. Moore parked his Camaro on the street and entered the residence.

[5] Several minutes later, Moore exited the residence and then drove his Camaro to a nearby Family Dollar store. Shortly thereafter, Thompson's pickup truck arrived and parked next to Moore's Camaro. The driver of the pickup truck walked across the parking lot where he met a woman.[2] He then led the woman to the driver's side window of Moore's Camaro. The woman leaned in through the window for less than a minute. The woman then walked away from the Camaro while holding a white package in her left hand.

---

[2] Law enforcement officers were unable to identify the driver of the pickup truck on the date of the Family Dollar incident. On some later date, law enforcement officers determined that the driver was Thompson. Tr. Vol. 1, pp. 146-47.

[6]     After making these observations, law enforcement officers applied for a warrant to search Thompson's residence. Detective Chris Frazier of the Drug Task Force prepared a probable cause affidavit, which provides in relevant part:

> Beginning in early 2020 the Madison County Drug Task Force (MCDTF) began an investigation into Lamont Juarez Moore (MOORE). MCDTF learned that MOORE was distributing large quantities of methamphetamine, heroin, and cocaine in Madison County, Indiana.
>
> August of 2020 through present, MCDTF, utilizing Confidential Informants (CI's) and MCDTF Confidential Funds conducted 11 controlled purchases of methamphetamine and two controlled purchases of heroin/fentanyl from MOORE. Approximately 3 pounds 12 ounces of methamphetamine, 9 grams of fentanyl, and less than 1 gram of cocaine have been seized during these controlled purchases.
>
> During the month of June, 2023, MCDTF orchestrated a controlled purchase of Heroin, from primary target Lamont Moore. Moore arrived at the buy location, as the front seat passenger, in a silver 2014 Dodge Ram, bearing plate TK575OKS. The Dodge Ram was being driven by an unidentified male black. The controlled purchase was completed, with the sale of Heroin confiscated by MCDTF. As the silver Dodge Ram pulled clear of the controlled purchase, MCDTF investigators followed the Dodge Ram, into an area on W. 18th St. The truck was registered to Anthony Wayne Thompson.
>
> On July 13, 2023, I was conducting surveillance on Lamont Moore, to document his activity. Detective Dwiggins, of MCDTF, assisted me in surveillance. MCDTF was not orchestrating a controlled purchase with Moore, simply monitoring Moore's behavior and activity. Moore was observed

driving a Chevrolet Camaro and seen exiting 821 Shellbark Rd., which is Moore's residence. Moore travelled south on Raible Ave. Moore pulled the Camaro in close behind a silver Dodge Ram truck and slowly followed behind, as both vehicles turned west on W. 18th St. The silver Ram turned into the drive of 2806 W. 18th St. I recognized this vehicle as the same silver Dodge Ram, seen by MCDTF, during the controlled purchase of Heroin from Lamont Moore. I confirmed the plate was the same as seen in June. Moore parked on W. 18th and entered the residence. Several minutes passed and Moore was seen leaving the residence, traveling west on W. 18th St. Moore conducted [a] U-turn at the corner of W. 18th and Kerrwood Drive. Moore drove east on W. 18th St and then turned North on Brentwood Drive. Moore then arrived and stopped at Family Dollar Store, located on Nichol Ave. Moore backed into a parking space and did not exit the Camaro. Several minutes later the silver colored Dodge Ram truck entered the Family Dollar Lot and parked next to Moore. The unidentified driver of the Dodge Ram exited and stood on foot. The unidentified driver meandered in the parking lot until making contact with a female black. The unidentified driver led the female black to the driver's window of Moore's Camaro. Prior to making contact with Moore, the female black did not appear to have any items in either of her hands. MCDTF observed the female black leaning in to the driver's window and spending no more than 30 seconds, at the window. The female black walked away from the driver's window holding a white package in her left hand. It did not appear the female black was carrying anything in her hand prior to approaching the Camaro. Shortly after the female black walked away, Moore drove out of the Family Dollar lot heading south on Brentwood Dr. This behavior was captured by photograph.

I recognized the behavior and actions of Moore and the driver of the silver Dodge, to be consistent with drug sales and distribution. I have personally witnessed the same type of behavior, in previous orchestrated controlled purchases where

narcotics were purchased, from Moore, specifically in [redacted] when Moore was the passenger in the silver Dodge Ram. The transactions are very short in duration, lasting, at times, only seconds and usually conducted in parking lots or other more public locations. I began investigating Anthony Thompson's association, with the residence of 2806 W. 18th St. Anthony Wayne Thompson is listed, as the deeded owner of 2806 W. 18th St, the Madison County Treasurer's Office, as of 2015. Anthony Thompson is also listed as the purchaser of 2806 W. 18th St., as of November 20, 2015, as he is listed on a Tax Deed, issued through the Madison County Recorder's office.

I have obtained a criminal history on Anthony Thompson and know him to have felony convictions, through the State of Indiana, for armed robbery (2005), resisting law enforcement (2012) and dealing in methamphetamine (2018).

Assigned as a Task Force Officer, with the FBI Indianapolis branch, I have knowledge Lamont Moore is a primary federal target, for an investigation in the distribution of methamphetamine. As a result of MCDTF's investigation a federal search warrant has been issued for the search of Moore's residence. Moore's actions in the orchestrated controlled purchase, in June 2023 with MCDTF, resulted in the purchase of controlled substances. Moore was aided, by a male black believed to be Anthony Thompson, on that date. On July 13, 2023, Moore and the same male black were surveilled conducting themselves, in behavior recognizable and consistent with the sale and distribution of narcotics. Moore was seen stopping at 2806 W. 18th St, just prior to driving directly to a location where narcotics were believed to be sold and distributed. 2806 W. 18th is solely owned by Anthony Thompson and the silver Dodge Ram truck registered to Thompson has been involved in 2 narcotics transactions, surveilled by MCDTF. At the writing of this affidavit today, July 17, 2023, the silver Dodge Ram is parked in the driveway of 2806 W. 18th Street.

> Taking into account Anthony Thompson's criminal history with a prior conviction for dealing methamphetamine, his vehicle being involved in 2 separate narcotics transactions, one of which Thompson is believed to have aided Lamont Moore in distributing heroin, and Thompson being the sole owner of 2806 W. 18th Street, it is reasonable to believe 2806 W. 18th St., is a location where narcotics are being stored or kept, including drug paraphernalia, currency and pre-cursors for the distribution and sale of narcotics.

Ex. Vol. pp. 163-64 (footnote omitted).

[7] The affidavit contains inaccurate information concerning Thompson's prior criminal history. Specifically, in 2018, in case 48C03-1801-F2-161, Thompson was *charged* with dealing in methamphetamine but he was *not convicted* of that offense. Instead, he pleaded guilty to and was convicted of Class B misdemeanor visiting a common nuisance, and the dealing charge was dismissed.

[8] On July 18, the trial court issued the warrant for the search of Thompson's home. The officers executed the search warrant the next day and found three firearms. They also found an aggregate amount of 3.05 grams of methamphetamine. The State ultimately charged Thompson with Level 5 felony possession of methamphetamine and three counts of Level 4 felony possession of a firearm by a serious violent felon.

[9] On February 15, 2024, Thompson filed a motion to suppress the evidence found during execution of the search warrant. Thompson argued that the warrant was not supported by probable cause because the affidavit did not

contain information sufficient to support the conclusion that it was probable that evidence of drug dealing would be found in his home and it contained the inaccurate statements concerning his prior criminal history.[3]

[10] During the suppression hearing, Detective Frazier testified that he looked at Thompson's criminal history by accessing MyCase.in.gov online. Tr. Vol. 2, pp. 34-36. The detective noted that Thompson had been charged with dealing in methamphetamine in Madison County in 2018. He admitted that he "did not open the body of the disposition" for the 2018 charges. *Id.* at 35. The parties agreed that the disposition of the charges, and specifically that the dealing charge was dismissed, was information available to the detective utilizing MyCase. *Id.* at 47.

[11] The trial court issued a written order denying Thompson's motion to suppress. *See* Appellant's App. Vol. 2, pp. 105-10. The trial court determined that, while the affidavit contained information sufficient to establish that Thompson aided Moore in the dealing transactions, the affidavit lacked sufficient facts to find probable cause to search Thompson's home. Specifically, the court concluded that the "affidavit is bereft of evidence or inferences that the defendant sold any drugs to anyone. . . . Without some evidence or inference that the defendant sold drugs, the affidavit contains insufficient facts to find probable cause to search his home." *Id.* at 107. However, the court also concluded that the good

---

[3] Thompson also argued in his motion that the information in the affidavit was stale, but he did not raise this issue in his Appellant's Brief.

faith exception applied to the execution of the search warrant. The court found that the detective's failure to accurately report Thompson's criminal history was negligent but that he did not act with reckless disregard for the truth. *Id*. at 108-09. And the court concluded that the "warrant was not so facially deficient that executing officers could not reasonably presume it to be valid." *Id*. at 109.

[12] The trial court held Thompson's bench trial on October 28. The court overruled Thompson's objection to the admission of the evidence found during the search of his home, which included over three grams of methamphetamine and three firearms. The court found Thompson guilty as charged. The trial court imposed an aggregate eight-year sentence and ordered Thompson to serve four years executed in the Department of Correction and suspended four years to probation.

## Standard of Review

[13] Thompson challenges the admission of the evidence discovered during the search of his home. Because he appeals following his completed bench trial, we must determine whether the trial court abused its discretion when it admitted the evidence. *See Clark v. State*, 994 N.E.2d 252, 259 (Ind. 2013). An abuse of discretion occurs when the decision is clearly against the logic and effect of the facts and circumstances before the trial court. *Cox v. State*, 160 N.E.3d 557, 560 (Ind. Ct. App. 2020). We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Bell v. State*, 81 N.E.3d 233, 236 (Ind. Ct. App. 2017), *trans. denied*. We also consider the

uncontested evidence favorable to the defendant. *Id.* In addition, "when an appellant's challenge to such a ruling is predicated on an argument that impugns the constitutionality of the search or seizure of the evidence, it raises a question of law, and we consider that question de novo." *Guilmette v. State*, 14 N.E.3d 38, 40-41 (Ind. 2014).

## The Inaccurate Reporting of Thompson's Criminal History

[14] It is undisputed that the probable cause affidavit contained inaccurate statements concerning Thompson's criminal history. Detective Frazier had the ability to use the MyCase.in.gov to determine what offense Thompson was convicted of in 2018. The detective simply had to open the chronological case summary, a public document, to learn that the dealing charge was dismissed and that Thompson was convicted of misdemeanor visiting a common nuisance.[4] His failure to do so demonstrated a reckless disregard for the truth.

[15] Accordingly, we will not consider the inaccurate statements in the probable cause affidavit as we consider the issue presented in this appeal. The inaccurate statements are only meaningful to our analysis if the remainder of the affidavit is insufficient to establish probable cause. *See Keeylen v. State*, 14 N.E.3d 865, 872 (Ind. Ct. App.), *clarified on reh'g*, 21 N.E.3d 840 (Ind. Ct. App. 2014)

---

[4] The chronological case summary makes references to both maintaining a common nuisance and visiting a common nuisance. Our review of the sentencing order in that case established that Thompson was convicted of visiting a common nuisance. Regardless, it is abundantly clear that the felony dealing charges were dismissed.

(explaining that the United States Supreme Court has held that, "[i]f an allegation of perjury or reckless disregard is established by the defendant, and the rest of the affidavit is insufficient to establish probable cause, 'the search warrant must be voided' and any evidence obtained from its fruits excluded.") (quoting *Franks v. Delaware*, 438 U.S. 154, 156 (1978)).

## The Erroneous Information Notwithstanding, the Warrant Was Supported by Probable Cause

[16] The Fourth Amendment provides, in relevant part, "no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The text of Article 1, Section 11 of the Indiana Constitution contains language nearly identical to the Fourth Amendment.[5] "'Protection against unreasonable searches and seizures is one of the most essential constitutional rights under both the Fourth Amendment and Article 1, Section 11 of the Indiana Constitution." *McIlquham v. State*, 10 N.E.3d 506, 511 (Ind. 2014) (quoting *Brown v. State*, 653 N.E.2d 77, 79 (Ind. 1995)). Therefore, evidence seized in violation of these constitutional rights may not be admitted at trial. *Wright v.*

---

[5] Thompson refers to Article 1, Section 11 throughout his brief. However, the State argues that he waived his Indiana constitutional claim because he failed to separately analyze his claim under that constitutional provision. Thompson's arguments under both constitutional provisions are intermingled throughout his brief, but he cites to relevant case law addressing claims under the Indiana Constitution. *See, e.g.*, Appellant's Br. at 12. Moreover, the legal analyses of the issue on appeal under both the federal and state constitutional provisions are identical. *Bunnell v. State*, 172 N.E.3d 1231, 1234 (Ind. 2021). Therefore, we conclude that he preserved his state constitutional claim, and we address both provisions simultaneously in our analysis.

*State*, 108 N.E.3d 307, 313-14 (Ind. 2018); *Reinhart v. State*, 930 N.E.2d 42, 48 (Ind. Ct. App. 2010).

[17] The General Assembly has codified these principles in Indiana Code Section 35-33-5-2 (2014), as follows in relevant part:

> (a) Except as provided in section 8 of this chapter, and subject to the requirements of section 11 of this chapter, if applicable, no warrant for search or arrest shall be issued until there is filed with the judge an affidavit:
>
> > (1) particularly describing:
> >
> > > (A) the house or place to be searched and the things to be searched for; or
> > >
> > > (B) particularly describing the person to be arrested;
> >
> > (2) alleging substantially the offense in relation thereto and that the affiant believes and has good cause to believe that:
> >
> > > (A) the things sought are concealed there; or
> > >
> > > (B) the person to be arrested committed the offense; and
> >
> > (3) setting forth the facts known to the affiant through personal knowledge or based on hearsay, constituting the probable cause.

[18]    "The determination of probable cause is based on the facts of each case and requires the issuing magistrate to 'make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, there is a fair probability that evidence of a crime will be found in a particular place.'" *Darring v. State*, 101 N.E.3d 263, 268 (Ind. Ct. App. 2018) (quoting *Keeylen*, 14 N.E.3d at 871); *see also Carter v. State*, 105 N.E.3d 1121, 1127 (Ind. Ct. App. 2018) (explaining that probable cause is a fluid concept incapable of precise definition and is to be decided based on the facts of each case), *trans. denied*. "The duty of the reviewing court is to determine whether the magistrate had a 'substantial basis' for concluding that probable cause existed." *Jaggers v. State*, 687 N.E.2d 180, 181 (Ind. 1997). "We consider only the evidence presented to the issuing judge and not post hoc justifications for the search." *Albrecht v. State*, 185 N.E.3d 412, 420 (Ind. Ct. App. 2022) (citing *Jaggers*, 687 N.E.2d at 182), *trans. denied*.

[19]    "'Probable cause is only a probability or substantial chance of criminal activity, not a certainty that a crime was committed.'" *Keeylen*, 14 N.E.3d at 871 (quoting *Suarez v. Town of Ogden Dunes*, 581 F.3d 591, 596 (7th Cir. 2009)).

> Probable cause is "not a high bar," *Kaley v. United States*, 571 U.S. 320, 338, 134 S. Ct. 1090, 188 L. Ed. 2d 46 (2014), and is cleared when the totality of the circumstances establishes "a fair probability"—not proof or a prima facie showing—of criminal activity, contraband, or evidence of a crime, *Illinois v. Gates*, 462 U.S. 213, 235, 238, 243 n.13, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). *See McGrath v. State*, 95 N.E.3d 522, 528 (Ind. 2018). Accordingly, probable cause does not establish guilt. In fact, innocent activity will often supply a basis for showing probable

cause. *Gates*, 462 U.S. at 243 n.13, 103 S. Ct. 2317; *McGrath*, 95 N.E.3d at 529.

*Hodges v. State*, 125 N.E.3d 578, 581-82 (Ind. 2019).

[20] Thompson argues that the warrant was not supported by probable cause because there were no facts in the affidavit sufficient to establish a fair probability that evidence of drugs or drug activity would be found in his home. Thompson claims that the affidavit only established his presence at one "interaction that police believed to be a drug transaction" and that his pickup truck was used during a controlled buy. Appellant's Br. at 14. He argues that "there was no nexus between the illegal transactions Moore was engaging in, and Thompson's residence, other than Moore's presence at the residence on the same day police speculate that a drug transaction was taking place."[6] Appellant's Br. at 14. Thompson encourages our court to agree with the trial court's conclusion that the "affidavit [wa]s bereft of evidence or inferences that the defendant sold any drugs to anyone." Appellant's App. Vol. 2, p. 107.

---

[6] The State observes that Detective Frazier relied on his experience in investigating drug dealing to conclude that Moore and Thompson were likely involved in dealing when Moore arrived at Thompson's house, where he stayed for a short period of time, before both men drove vehicles to the Family Dollar. In *McGrath*, 95 N.E.3d at 529 n.5, in a footnote, our Supreme Court observed that "state and federal courts have long recognized the police officer's investigatory insight in evaluating probable cause." (Citing Anna Lvovsky, *The Judicial Presumption of Police Expertise*, 130 Harv. L. Rev. 1995, 2026-27 (2017) (citing cases)). "Indiana is no exception, as our courts are consistently 'deferential to police officer training and experience.'" *Id.* (quoting *Denton v. State*, 805 N.E.2d 852, 856 (Ind. Ct. App. 2004), *trans. denied*). "Otherwise, 'there would be little merit in securing able, trained [officers] to guard the public peace if their actions were to be measured by what might be probable cause to an untrained civilian.'" *Id.* (quoting 2 Wayne R. LaFave, *Search & Seizure: A Treatise on the Fourth Amendment* § 3.2(c) (5th ed. 2017) (internal quotations omitted)).

[21]  However, the affidavit was not bereft of evidence or inferences that Thompson was involved in drug dealing with Moore. Law enforcement officers had been investigating Moore's involvement in drug dealing for years, and, during a June 2023 controlled buy, Thompson's pickup truck was used to transport Moore to the buy location. And after the transaction was completed, the officers observed the pickup truck return to an area that they later learned was near Thompson's house. On July 13, 2023, law enforcement officers were surveilling Moore and observed that Moore appeared to be following Thompson's pickup truck until the vehicles arrived at a residence, which they learned was owned by Thompson. Moore went into the residence for several minutes. Moore then exited the residence and drove his vehicle to the Family Dollar store. Shortly thereafter, the officers saw Thompson's pickup truck enter the parking lot as well. The driver of Thompson's pickup truck exited the truck and encountered a woman in the parking lot who the driver then escorted to Moore's vehicle. The officers then observed what they believed to be a drug transaction between Moore and the woman.

[22]  From these observations, the officers reasonably inferred that there was a fair probability that evidence of drug dealing would be found in Thompson's home. The facts and inferences therefrom that were recounted in the probable cause affidavit established a link between Moore and Thompson, or at a minimum, between Moore and an occupant of Thompson's home. Because Moore went into Thompson's home before the transaction at Family Dollar, which the officers believed from their training and experience to be drug dealing, and

because Thompson's vehicle was involved in the controlled buy and the Family Dollar transaction, Detective Frazier's affidavit established a nexus between Thompson and his residence, and Moore's well-established drug dealing activity.

[23] Under the totality of these circumstances, we conclude that the search warrant was supported by probable cause, and, therefore, the admission of the evidence at trial did not violate Thompson's Fourth Amendment or Article 1, Section 11 rights.

[24] Affirmed.

Kenworthy, J., and Felix, J., concur.

ATTORNEY FOR APPELLANT

Paul J. Podlejski
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Ian McLean
Supervising Deputy Attorney General

John R. Oosterhoff
Deputy Attorney General
Indianapolis, Indiana